**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **ROWE INTERNATIONAL CORP.** and **ARACHNID, INC.,** | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Case No. 06 C 2703 ) |
| **ECAST, INC.,** | ) ) |
| Defendant. | ) ) |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

In this decision, the Court construes additional disputed terms in the claims of various patents at issue in the upcoming trial in this case. Familiarity with the allegations in the case is assumed. *See generally Rowe Int'l Corp. v. Ecast, Inc.*, No. 06 C 2703, 2008 WL 4133516 (N.D. Ill. Aug. 25, 2008) (decision on motions for summary judgment); *Rowe Int'l Corp. v. Ecast, Inc.*, 500 F. Supp. 2d 891 (N.D. Ill. 2007) (claim construction); *Rowe Int'l Corp. v. Ecast, Inc.*, 500 F. Supp. 2d 885 (N.D. Ill. 2007) (decision on motion to dismiss); *Rowe Int'l Corp. v. Ecast, Inc.*, 241 F.R.D. 296 (N.D. Ill. 2007) (decision on disputed privilege issue).

**1.     U.S. Patent No., 5,848,398**

Claim 1 of the '398 patent discloses:

1.     A computer jukebox capable of receiving and storing digital data representing a plurality of advertisements, data representing the identity of each of said advertisements, and data representing when and the number of times each of said advertisements is to be run, comprising:

> a visual screen associated with said jukebox;
>
> a song selection means displayed on said visual screen, actuable by a user for retrieving and playing a signal representing a song selected from a plurality of songs stored in said jukebox;
>
> a communication interface for receiving said advertisement data, said data representing the identity of each of said advertisements, and said data representing when and the number of times each of said advertisements is to be run;
>
> a *programmable computer memory* storing said digital data representing each advertisement on said jukebox, the location of said digital data representing each advertisement, and said data representing when and the number of times each of said advertisements is to be run on said visual screen; and
>
> *processing means* for displaying one of said plurality of advertisements on said visual screen, when said jukebox is not generating a signal representing a song selected from said plurality of songs stored in said jukebox, wherein said processing means is responsive to said data representing when and the number of times each of said advertisements is to be run.

U.S. Pat. No. 5,848,398, claim 1 (emphasis added).

    **a.    "processing means"**

The italicized reference to "processing means" is a means-plus-function limitation and, as such, covers the "structure, material, or acts described in the specification" that correspond to the function recited in the claim, and equivalents thereof. 35 U.S.C. § 112 ¶ 6. The function recited in the claim is displaying, on the jukebox's visual screen, one of a plurality of advertisements when the jukebox is not playing a song. The Court agrees with Rowe and Arachnid that as the claim is worded, the phrase "wherein such processing means is responsive to said data representing when and the number of times each of said advertisements is to be run" is not the function of the processor, but rather a claim limitation (which, as Rowe and Arachnid concede, must be separately

shown as part of their infringement case) describing how the function is performed.

The structure, in a claim like this one, is the algorithm disclosed in the specification that runs on the disclosed microprocessor. *See Rowe Int'l Corp.*, 500 F. Supp. 2d at 904. This "structure," as described in the specification of the '398 patent, is as follows:

> In the preferred embodiment, if a conflict arises between a song being played and the time for an advertisement to be played, the conflict is resolved as follows. *If the song contains audio only and no associated graphics being shown on the visual display 125, then the advertisement, if it is video only, will be played simultaneously. If the advertisement contains video data and audio data, the advertisement will be run at the next available time slot or be [skipped] altogether.* As each jukebox 13 tracks when an advertisement starts and when it stops, if a particular advertisement is never run, then the central management system will receive such information and the advertiser will be billed accordingly.

'398 patent, col. 9, lines 9-21 (emphasis added).[1] The structure corresponding to the function described in the disputed language in the patent is found in the italicized sentences. It consists of a microprocessor that directs the display of one of the advertisements at the same time a song is played if the song is just audio and the advertisement is just video, or at the next available time slot if the advertisement is both video and audio.

b. **"programmable computer memory"**

Claim 1 of the '398 patent also contains a claim limitation referencing "programmable computer memory." The Court has a hard time seeing why this term requires further definition; it quite plainly refers to computer memory that can be

---

[1] The bracketed word appears as "shipped" in the specification, but it appears to be undisputed that this is a typographical error and that what was intended is the word "skipped."

programmed. The Court rejects Ecast's contention that this is a reference only to a particular type of memory, specifically random access memory, or RAM. That is not the only type of programmable computer memory, and the Court sees nothing in the claims, the specification, or any persuasive extrinsic evidence that would warrant imposing this further limitation on the claim language.

**2.     U.S. Patent No. 6,970,834**

   **a.     "programmable memory"**

The meaning of language in claims 3 and 10 of the '834 patent is disputed. The term "programmable memory" in both of those claims is disputed. The Court determines that this has the same meaning as "programmable computer memory" in the '398 patent, discussed above. The Court rejects Ecast's contention that this refers only to RAM. A further reason supporting this determination with respect to the '834 patent is that the specification makes reference to "optical memory" and "any other large volume nonvolatile computer memory that provides both read and write access," neither of which would be covered if Ecast's proposed definition were adopted.

   **b.     "at least one time for said at least one advertisement to be run"**

Claim 10 of the '834 patent discloses:

   10.     A computer jukebox receiving and storing advertisement data representing at least one advertisement from a remote central management system by way of a transmission link between, the computer jukebox and the central management system, said computer jukebox comprising:

   advertisement data;

   a communication interface receiving said advertisement data from the remote central management system by way of the transmission link;

> a programmable memory storing said advertisement data; and
>
> a processor running said at least one advertisement according to said advertisement data, wherein said advertisement data includes an identity of at least one advertisement, and *wherein said advertisement data includes at least one time for said at least one advertisement to be run by said computer jukebox*, wherein said processor runs said at least one advertisement according to said advertisement data when said jukebox is not generating a signal representing a song selected from a plurality of songs stored in said jukebox.

U.S. Pat. No. 6,970,834 B2, claim 10 (emphasis added).

It is difficult for the Court to see why the italicized language requires much, if anything, in the way of construction; it is facially straightforward. This language requires that the advertisement data stored in the programmable memory include one or more times that the advertisement is to be shown on the jukebox. Ecast contends that the "to be shown" language requires the data to include only *future* running times for the ad. The Court disagrees. Though, as Rowe and Arachnid concede, and as the Court concluded in interpreting a somewhat similar limitation in the '398 patent, this does not include backward-looking information (e.g., the number of times an ad has been run), the claim language permits the data to include information that would cause an ad to be played simultaneously with a song that is selected for play.

**3.     U.S. Patent No. 6,397,189**

Claim 7 of the '189 patent discloses:

7.     An improved computer jukebox network comprising: a plurality of computer jukeboxes where each computer jukebox is capable of playing songs selected by users of the computer jukebox from a library of songs that have been digitally compressed and stored in the computer jukebox and where the library of songs is capable of being updated upon the receipt of *compressed digital song data*, which represents at least one song, and upon the receipt of song identity data which represents the identity of each such song; and a management station for updating the

library of songs in each of the plurality of computer jukeboxes;
with each computer jukebox comprising:

> a communication interface for receiving the *compressed digital song data* and the song identity data;
>
> a data storage unit for storing the received *compressed digital song data* and the received song identity data for each of the songs stored;
>
> a display for showing, to prospective user of the computer jukebox, information based on song identity data for identifying the songs for which digital song data is stored in the data storage unit;
>
> selection keys responsive to a selection of a song to be played on the computer jukebox from the song identity information displayed on the display, the selection keys including a signal output representing activation of the selection keys;
>
> at least one audio speaker;
>
> a processor connected to a memory, the memory including a decompression algorithm for decompressing *compressed digital song data*;
>
> a digital to analog converter coupled between the processor and the audio speaker to convert digital song data to an analog signal coupled to the speaker; and
>
> wherein the memory further includes instructions for:
>
>> causing the processor, in response to the signal output, to access and process *compressed digital song data* retrieved from the data storage unit so that the accessed *compressed digital song data* corresponds to the song selected by the selection keys;
>>
>> causing the processor to decompress the accessed *compressed digital song data* and send the decompressed digital song data to the digital to analog converter so that the song selected is played on the computer jukebox as a result of the corresponding stored *compressed digital song data* being decompressed and converted by the processor and the digital to analog converter; and
>>
>> causing the processor to respond to *compressed digital song data* and to song identity data, which may be received by the communication interface of the computer jukebox, to control the

> storage of the received *compressed digital song data* and the received song identity data in the data storage unit to create an updated library of songs stored in the computer jukebox; and
>
> wherein the management station comprises:
>
> a communication interface including a receiver and a transmitter; and
>
> a management station processor connected to a management station memory, the management station memory including instructions for:
>
> causing the management station processor to store digital song data, representing a set of songs, and song identity data, representing the identity of each song in the set of songs in a management station data storage unit;
>
> *causing the management station processor to compress digital song data stored in the management station data storage unit;*
>
> *causing the management station processor to compress and transmit a subset of the digital song data and transmit corresponding song identity data to at least one selected computer jukebox to update the library of songs in the computer jukebox.*

U.S. Pat. No. 6,397,189 (emphasis added).

### a. one vs. two compressions

The Court agrees with Rowe and Arachnid that the italicized language does not require the management station to compress the digital song data twice. All the language requires is that the management station's memory include instructions for compressing digital song data that is stored, ad for causing the management station's processor to compress and transmit digital song data to at least one of the jukeboxes to update its library. The latter action does not, by its language, require that the management station processor compress for a second time already-compressed song

7

data.

    b.    **"compressed digital song data"**

The Court rejects Rowe and Arachnid's contention that claim 7's references to "compressed digital song data" require that the compression scheme "preserve the playback quality of the song." Pls.' Submission of Proposed Claim Constructions at 6. Such a requirement is not found in the claim language or in the specification. The phrase "compressed digital song data" means song data that has been transformed so that it requires less storage space.

**4.    U.S. Patent No. 5,381,575**

The parties dispute language in claims 9 and 15 of the '575 patent. Claim 15 discloses:

> 15.    A computer jukebox network, comprising:
>
> a central management system for distributing digitized songs stored in a digitized song library to a computer jukebox, the central management system comprising:
>
>> at least one system communication interface for transmitting digitized song data and for transmitting an associated song record, the song record including song identity data comprising at least one of a song title, a song category, song address, song size, graphics address, graphics size, and play count;
>>
>> a system memory storing digitized song data and song identity data;
>>
>> and a system processor operative to retrieve selected digitized song data and transmit the selected digitized song data to a computer jukebox through the at least one communication interface, *the processor further operative to retrieve song identity data associated with the selected digitized song data, build an associated song record using the song identity data, and transmit the associated song record to the computer jukebox* through the at

>> least one communication interface; and
>
> a plurality of computer jukeboxes for playing songs stored in a memory in the computer jukebox, at least one computer jukebox comprising:
>
>> at least one jukebox communication interface for receiving digitized song data and for receiving an associated song record, the song record including song identity data comprising at least one of a song title, a song category, song address, song size, graphics address, graphics size, and play count;
>>
>> a jukebox memory storing the digitized song data and the song identity data;
>>
>> a display presenting song selections based on the song identity data;
>>
>> a song selector for determining from the song selections a selected digitized song to be played on the computer jukebox;
>>
>> at least one audio speaker;
>>
>> a processor operative to retrieve digitized song data corresponding to the selected digitized song, and operative to store the digitized song data and the song identity data received by the at least one communication interface in the memory; and
>>
>> a digital to analog converter coupled between the processor and the audio speaker to convert the digitized song data to an analog signal for the audio speaker.

U.S. Pat. No. 6,381,575, claim 15 (emphasis added)

### a. "the processor further operative"

The processor disclosed in claim 15, and in similar language in claim 9, is one that retrieves song identity data associated with the selected song; puts together ("builds") a song record using that data; and transmits it to the computer jukebox. Ecast expresses concern that Rowe and Arachnid are going to attempt to use a different construction of this language for purposes of assessing validity from the one they intend

9

to use for purposes of assessing infringement. The Court agrees that the same construction must be used for both purposes, but it must include the entirety of the claim limitation, not just selected parts. It appears, from what the Court can discern, that Ecast is concerned that in assessing certain prior art references, Rowe and Arachnid agree that certain prior art references involve "transmitting" a song record but contend those references do not involve "building" a song record. The dispute may thus involve the meaning and significance of the term "build." Neither side has done anything in the current submissions to address that point, and the Court is hesitant to jump in unaided by argument. All the Court will say for the time being is that it is not clear that this term requires anything more elaborate than compiling the data associated with a song and transmitting it to the computer jukebox. Further definition will have to await further argument by the parties.[2]

5.   **"User attract" limitations**

The parties' discussions about the "user attract" limitations contained in several claims in the patents at issue in the case are so opaque that they leave the Court entirely unable to figure out what is in dispute. The Court construed these limitations in its earlier claim construction decision and sees no basis to revisit that construction. If there is something still at issue and one of the lawyers can clearly and succinctly describe what it is, the Court is willing to address the point. But that has not been done

---

[2] The Court is not asking for, and will not accept, further written submissions. If a party believes that further definition of this term is required, its counsel should raise the issue orally at an appropriate point at or near the outset of the trial, after giving prior notice to opposing counsel of the party's intention to address the point, so that both sides are prepared to address it.

in the parties' current submissions.

## Conclusion

The Court construes the disputed claim terms in accordance with the conclusions set forth in this Memorandum Opinion and Order.

                                                                              _____
                                                                              MATTHEW F. KENNELLY
                                                                              United States District Judge

Date: November 28, 2008